UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>      v.<br><br>MICHAEL EUGENE HOLLIS,<br><br>            Defendant. | No. 1:08-cr-00276-DAD-1<br><br>ORDER DENYING DEFENDANT'S MOTION TO VACATE OR REDUCE SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. Nos. 71, 73, 83) |

Pending before the court is defendant Michael Eugene Hollis's motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. Nos. 71, 73, 83.)[1] That motion is based in part on the purported risks allegedly posed to the defendant by the ongoing coronavirus ("COVID-19") pandemic. In addition, because he does not have available housing upon his release from confinement, defendant Hollis requests that the court preliminarily rule on whether he presents extraordinary and compelling reasons warranting his compassionate release, and then hold a second hearing or accept supplemental briefing addressing the appropriate conditions of his supervised release with respect to securing housing or a halfway house placement for him through United States Probation. (Doc. No. 73 at 9, 23.) For the reasons explained below,

---

[1] Defendant's *pro se* motion was docketed by the court on September 4, 2020 under seal because it reflected some personal information. (Doc. No. 71.) A properly redacted version of that filing was later placed on the public docket on November 17, 2020. (Doc. No. 83.)

1

defendant's motion will be denied. Accordingly, neither a subsequent hearing nor supplemental briefing on the issue of defendant's housing on supervised release will be necessary.

## BACKGROUND

On December 1, 2008, defendant Hollis entered a plea of guilty to a single count of receipt or distribution of material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2). (Doc. No. 16.) On May 11, 2009, the district judge previously assigned to this case sentenced defendant to 210 months in the custody of the U.S. Bureau of Prisons ("BOP"), to be followed by a ten-year term of supervised release. (Doc. No. 27.) Defendant appealed his sentence to the Ninth Circuit and, after remand, he was re-sentenced to 200 months of imprisonment, to be followed by a ten-year term of supervised release. (Doc. Nos. 38, 48, 49.) Defendant is now serving his sentence at Federal Correctional Institution, Terminal Island ("FCI Terminal Island"). (*See* Doc. No. 73 at 10.) His current projected release date is October 28, 2022. (Doc. No. 73-2 at 1–2.)[2]

/////

---

[2] In his initial handwritten *pro se* motion for compassionate release, defendant Hollis made a number of representations regarding his efforts to be released from confinement. In this regard, defendant represented that he has been deemed eligible for participation in the BOP's Residential Drug Alcohol Program ("RDAP") and, accordingly, he will spend one less year in custody and be released one year earlier than his current projected release date in exchange for his participation in RDAP. (Doc. No. 83 at 29–30.) Defendant also indicated that he was scheduled to commence the RDAP on March 2020, but it was postponed indefinitely due to the COVID-19 pandemic. (Id.) Next, defendant states that beginning in March 2020, he was considered by the BOP for home confinement, and that he twice signed and submitted papers to his Case Manager at FCI Terminal Island for that purpose, but that "nothing came of it." (Doc. No. 83 at 3, 47–50.) Defendant reports his belief that because the relatives he could live with upon his release own guns, their residence does not meet the requirements for home confinement. (Doc. No. 83 at 3–4.) He clarifies that because of this restriction, he is not seeking home confinement through the pending motion, but only his compassionate release. (*Id*. at 3.) Defendant also asserts that the BOP has not been able to provide him with halfway house placement. (*Id*. at 3, 47–50.) According to defendant, in May 2020, the BOP indicated it was attempting to identify a halfway house for him to be released to (*id.* at 50), but defendant asserts he never heard back or learned if or why his request for a halfway house placement had been denied. Defendant argues that the BOP's decision to shutter halfway houses in the entire Eastern District of California, should not prevent him from being released. (*Id*. at 4) (citing *United States v. Lamendola*, No. 2:12-cr-451-2 KJM, 2019 WL 952039, at *1 n.1 (E.D. Cal. Feb. 27, 2019). However, this contention is no longer accurate due to the opening of the Turning Point RRC in Fresno, California. *See* https://www.bop.gov/locations/rrc/index.jsp?contract=15BRRC20D00000244.

On September 4, 2020, defendant filed a *pro se* motion seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. Nos. 71, 83.)  The court referred defendant's motion to the Federal Defender's Office ("FDO").  (Doc. No. 72.)  On November 6, 2020, the FDO filed a supplemental motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on behalf of defendant Hollis.  (Doc. No. 73.)  On December 7, 2020, the government filed its opposition to the motion, and on December 17, 2020, defendant filed his reply thereto.  (Doc. Nos. 84, 89.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.").  Those limited circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[3] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set

---

[3] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).  If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.*  "Appeal to the General Counsel is the final administrative appeal." *Id.*  When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

3

>     forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
>     (i)  extraordinary and compelling reasons warrant such a reduction; or
>
>     (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>     and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[4]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g

/////

---

[4] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

Comm'n 2018)[5]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966, 979 (C.D. Cal. 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A).

---

[5] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

> Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 970; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.     Administrative Exhaustion**

Here, the government concedes that defendant Hollis has exhausted his administrative remedies because more than thirty days lapsed between the time defendant submitted his administrative request and the filing of the pending motion. (Doc. No. 84 at 10.) Because failure to exhaust is normally viewed as an affirmative defense, which must be pled and proven, the court will accept the government's concession and turn to the merits of defendant's motion.

**B.     Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt.

n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of

/////

imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[6]

Here, defendant Hollis argues that extraordinary and compelling reasons warrant his compassionate release due to his age, gender, and that a number of serious health conditions from which he suffers put him at higher risk of suffering serious illness or complications from COVID-19. (Doc. No. 73 at 4–23.) Defendant reports suffering from type II diabetes, hypertension, obesity, peripheral vascular disease, arthropathy, a history of blood clots, and mobility issues that require the use of a cane, medical shoes, a knee brace, and, at times, a walker to move about the prison. (*Id.* at 9, 17.) Defendant argues that a number of these serious medical conditions place him at the highest risk of suffering severe illness and/or dying from COVID-19. (*Id.* at 17–22; *see also* Doc. No. 71 at 13). Defendant also asserts he is additionally vulnerable because he is male: "[f]or unknown reasons, COVID-19 kills far more men than it does women." (Doc. No. 73 at 18 (citing Chris Mooney, et al., *All Across the United States, the Coronavirus Is Killing More Men Than Women, Data Show*, Wash. Post. (April 4, 2020), https://www.washingtonpost.com/health/2020/04/04/coronavirus-men/).)

It is also reported that defendant Hollis tested positive for COVID-19 in April 2020 while in BOP custody at FCI Terminal Island. (Doc. No. 73 at 20.) Defendant asserts that he has not been tested since, and that BOP has listed his case as "resolved," despite the risk of re-infection by the virus. (Doc. Nos. 73 at 19–20 (listing COVID-19 confirmation in "Resolved" conditions).) Finally, defendant argues that FCI Terminal Island has one of the most serious, widespread COVID-19 outbreaks of any BOP facility in the country, and that the living conditions there make it impossible for him to adequately care for and protect himself. (Doc. No. 73 at 23–29.) In this regard, defendant argues that as of November 4, 2020, FCI Terminal Island had 588 inmates and 26 staff members who had tested positive for COVID-19, and ten inmates had died as a result of the virus. (*Id.* at 23–24.)

/////

---

[6] Here, this provision does not apply because defendant Hollis is 62 years old. (Doc. No. 73 at 16.) Therefore, his age and age-related factors are not considered for the purposes of this specific provision of the compassionate release statute.

1        Defendant Hollis has alleged that the conditions at FCI Terminal Island[7] make inmates
2   more vulnerable to contracting COVID-19, *inter alia*: overcrowding and the design of the facility
3   itself inhibits the practice of social distancing; sanitizing gels, such as Purell, are contraband in
4   prisons due to the alcohol content; there is difficulty preventing the introduction or re-
5   introduction of COVID-19 into prison facilities; and due to prisoners' ages and relatively poorer
6   health. (Doc. No. 83 at 18–25.) Defendant Hollis also describes how inadequate and inconsistent
7   disinfecting and a lack of mask compliance by staff at FCI Terminal Island. (*Id*. at 27.) He states
8   FCI Terminal Island's sick call process poses a particular risk to inmates. (*Id*. at 27–28.)
9   Because there are not medical exam rooms in housing units, inmates must congregate in line to
10  await treatment from healthcare staff who move amongst the various units, which poses risk of
11  viral spread, made worse when personal protective equipment is not properly worn. (*Id*.)

12       In its opposition, the government argues that defendant has failed to carry his burden of
13  establishing his eligibility for compassionate release because the mere existence of COVID-19 in
14  society or in the correctional institution where he is incarcerated is not an extraordinary and
15  compelling reason justifying the granting of the requested relief, and defendant's health
16  conditions do not diminish his ability to care for himself at FCI Terminal Island. (Doc. No. 84 at
17  16.) The government concedes that defendant Hollis's medical records indicate that he suffers
18  from a myriad of serious health conditions and that some of those conditions are recognized by
19  the CDC as potential risk factors for becoming severely ill from COVID-19, such as obesity,
20  pulmonary hypertension, and type II diabetes. (Doc. No. 84 at 9–10.) However, the government
21  disputes whether defendant has been diagnosed with pulmonary hypertension and further argues
22  that although the defendant does suffer from obesity and diabetes, "the defendant's recent

---

[7] In support of this contention, defendant Hollis refers the court to "a specialized report [filed in the United States District Court for the Central District of California] regarding the conditions at FCI Terminal Island finds that the facility was disastrously unprepared for the outbreak in the spring, and remains vulnerable to outbreaks in the future. *Wilson v. Ponce*, No. CV 20-4451-MWF, ECF No. 74-1 (C.D. Cal. filed Aug. 24, 2020) (Report on Current Management and Future Risks Associated with COVID-19 Infection at FCI Terminal Island, [] Michael Rowe, MD, available at https://www.aclusocal.org/sites/default/files/report_of_dr._michael_rowe.pdf).) (Doc. No. 73 at 25)(citation omitted.)

9

medical records indicate that the BOP is monitoring and treating his conditions as needed." (*Id.* at 16.) The government contends that defendant has not established he is unable to provide self-care at FCI Terminal Island, and that medical staff at that prison does indeed provide adequate medical care for him, as evidenced by his upcoming knee surgery. (Doc. No. 84 at 16.) The government adds that defendant Hollis had reported numerous health issues at sentencing, including his type II diabetes. (*Id.* at 9.) Lastly, the government asserts that defendant does not qualify for compassionate release because he previously contracted and recovered from an asymptomatic case of COVID-19 despite all of his serious health conditions, and because there is no evidence that "he would exhibit any, much less significant adverse, symptoms" if re-infected with the virus. (*Id.* at 18–19.)

In reply, defendant contends that his risk of becoming severely ill or dying from COVID-19 is neither lessened nor mitigated simply because he previously contracted and supposedly recovered from the illness, and that the government is incorrect in assuming that his recovery from COVID-19 indicates potential immunity from further rounds of infection. (Doc. No. 85 at 2, 4–5.) Defendant argues that he remains vulnerable in FCI Terminal Island because the facility has "demonstrated it cannot control the spread of COVID-19 within its walls." (*Id.* at 3.)

The court finds defendant suffers from serious medical conditions that put him at higher risk for severe illness from COVID-19. Defendant's conditions of type II diabetes and a body mass index of over 30 are listed by the CDC as risk factors for severe COVID-19 illness. *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed Feb. 9, 2021). Moreover, while defendant has recovered from an apparently asymptomatic COVID-19 infection (Doc. No. 73 at 11), courts have "err[ed] on the side of caution to avoid potentially lethal consequences" because "the science is unclear on whether reinfection is possible." *States v. Yellin*, No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *13 (S.D. Cal. June 26, 2020) (finding that extraordinary and compelling reasons existed where a COVID-positive inmate at FCI Terminal Island, who did not develop severe symptoms, had a

combination of medical conditions that placed him at risk of COVID complications); *see also United States v. Hanson*, No. 6:13-cr-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) ("[T]here is no current scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection, as several courts have recently acknowledged....[T]he Court remains concerned about FCI Terminal Island's ability to provide adequate care in light of defendant's complex medical needs. The Court is not convinced that FCI Terminal Island has been successfully mitigating the risk of reinfection, given the high numbers of infected inmates and Defendant's own contraction of the virus."). Other courts have taken the position that uncertainty surrounding the danger of reinfection "cuts against compassionate release," in part because it is the defendant's burden to establish that "extraordinary and compelling reasons" justifying compassionate release exist. *See United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020).

As this court has previously described, FCI Terminal Island initially failed to control the extent of its outbreak of COVID-19, and, as a result, a high number of its inmates tested positive for the virus and ten inmates died. *See United States v. Gean*, No. 1:17-cr-00179-DAD-BAM, 2020 WL 5366301, at *1 (E.D. Cal. Sept. 8, 2020). Indeed, FCI Terminal Island received national attention at that time because of the severity of the COVID-19 outbreak within that prison. (Doc. No. 83 at 23–24.) The court has previously expressed its concern regarding the BOP's practice of not re-testing prisoners before reporting them as having recovered from COVID-19. Defendant Hollis argues that this practice leaves all prisoners at risk. (Doc. No. 73 at 20.) Defendant Hollis refers to the publicized case of an inmate listed as having "recovered" from COVID-19 while imprisoned at FCI Terminal Island who re-contracted and ultimately died of a second COVID-19 infection. (*Id*. (citing Richard Winton, *Inmate Labeled As 'Recovered' From Coronavirus Dies at Terminal Island*, L.A. Times (May 28, 2020), https://www.latimes.com/california/story/2020-05-28/ninth-inmate-dies-coronavirus-terminal-island-prison.)) Other courts have expressed similar reservation about relying on the BOP's characterization of prisoners as having "recovered" from the virus. *See United States v. Hanson*, No. 6:13-cr-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) ("[T]here is no current

scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection, as several courts have recently acknowledged. . . . [T]he Court remains concerned about FCI Terminal Island's ability to provide adequate care in light of defendant's complex medical needs. The court is not convinced that FCI Terminal Island has been successfully mitigating the risk of infection, given the high numbers of infected inmates and defendant's own contraction of the virus."). Moreover, current scientific literature suggests that those who recover from an asymptomatic COVID-19 infection are not likely to have strong immunity, or protection for re-infection for long periods of time. *See* Consider This, *Third Vaccine on the War, Fauci Hails Spectacular Results*, NPR (Feb. 3, 2021), https://www.npr.org/ transcripts/962236361.

While the situation early on in the pandemic at FCI Terminal Island was obviously an extremely serious one, it appears that at the time defendant Hollis filed his motion, the active COVID-19 virus cases at that prison had significantly decreased.[8] At the time of the government's response, the BOP reported that only four staff members at were confirmed as having active COVID-19 cases while 563 inmates and 26 staff members have recovered. (Doc. No. 84 at 11.) As of February 15, 2021, the BOP reports that one inmate and five staff members at FCI Terminal Island are now confirmed as having active COVID-19 cases, with no additional deaths. *See* https://www.bop.gov/coronavirus/ (last viewed Feb. 15, 2021).

In light of all of the above, the court concludes that defendant suffers from multiple serious medical conditions and several of those conditions place him at higher risk of becoming seriously ill if he were to be re-infected by COVID-19. However, based on the appearance of the currently low numbers of COVID-19 cases at FCI Terminal Island and that the facility continues to provide defendant adequate medical care and permits him to provide for his own self-care, the circumstances are not sufficient to support a finding of extraordinary and compelling reasons warranting a reduction of defendant Hollis's sentence.

---

[8] As suggested above, the undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. However, there is also no evidence before the court contradicting those numbers as reported by the BOP with any degree of specificity.

### C.  Consistency With the § 3553(a) Factors

If defendant Hollis's motion was supported by a showing of extraordinary and compelling reasons supporting his compassionate release, the undersigned would be called upon to determine whether the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[9]  *See Parker*, 461 F. Supp. 3d at 979.  For the reasons addressed below, the undersigned concludes that consideration of those factors would not stand in the way of defendant's release in this case.

As noted above, after remand from the Ninth Circuit,[10] defendant Hollis was re-sentenced to 200-month term of imprisonment to be followed by a 120-month term of supervised release and with a mandatory assessment of $100 following his entry of a guilty plea to one count of receipt or distribution of material involving the sexual exploitation of minors.  (Doc. Nos. 38, 48, 49.)  At the time of the defendant's arrest, he was in possession of approximately 244 video files and more than 2,000 still files of child pornography, including pornographic images of extremely young children.  (Doc. No. 47 at 6–8.)  In light of this evidence, the nature of those depictions, the age of those depicted, and even with defendant's acceptance of responsibility acknowledged, the presentence report ("PSR") calculated the defendant's sentencing guideline as calling for a term of imprisonment of 240 months, the statutory maximum, and recommended a sentence of 240

---

[9]  Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

[10]  The Ninth Circuit held that the record did not establish that defendant Hollis distributed pornographic material "for the receipt, or expectation of receipt, of a thing of value" (i.e. in his case in order to obtain faster access to other pornography).  (Doc. No. 38 at 2.)  As a result, the five-level upward adjustment in his offense level for distribution under U.S.S.G. § 2G2.2(b)(3)(B) did not apply in his case.  (*Id.*)

13

months with a 120-month term of supervised release.  (PSR at 2a.)[11]  At defendant's initial sentencing hearing, the court varied downward from the 240–month sentencing guideline range after considering the factors set forth in 18 U.S.C. § 3553(a) and sentenced defendant to a 210-month term of imprisonment with a 120-month term of supervised release.  (Doc. No. 27.)  At his re-sentencing following defendant's successful Ninth Circuit appeal, the court took into account that defendant Hollis was not "a direct perpetrator" of any physical crimes and recognized that he had suffered extraordinary abuse as a child that caused him to turn to alcohol.  (Sent'g Tr., Doc. No. 55 at 37–38.)  With his three-level reduction for super acceptance of responsibility, the court determined that defendant's total offense level was 36 and that his criminal history category is III, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 235 and 293 months.  (*Id*. at 37.)  Once again taking the § 3553(a) factors into consideration, the court varied downward to an even greater degree and sentenced defendant Hollis to a 200-month term of imprisonment to be followed by a 120-month term of supervised release.  (Doc. Nos. 48, 49.)

Defendant argues that a sentence reduction is warranted at this time because he has now served nearly 150 months of his 200 month sentence, and, as noted above, his current projected release date is October 28, 2022.  (Doc. No. 73-2 at 1, 2.)  As noted above, defendant himself asserts that if the RDAP were to become available to him, he could be released from custody as soon as October 28, 2021.  (*Id*.)  Defendant further contends that his conduct shows that the purposes of punishment have been met because he is dedicated to rehabilitation by committing himself to the church, recovery self-help, physical rehabilitation, and release preparation classes.  (Doc. Nos. 73 at 12–13; 83 at 34–36.)  He states that while imprisoned he has developed valuable job skills in the library, as a "light duty parts counter," in oil well laboratory work, and in food service management.  (*Id*.)  Defendant also notes that he has no history of violence and no disciplinary issues while in custody.  (*Id*.)  Defendant argues that the COVID-19 pandemic has shifted consideration of the factor for the "need for just punishment" and urges the court to

---

[11]  The undersigned has obtained a copy of the PSR from the U.S. Probation Office because presentence reports were not filed on the court's public docket in 2008.

consider how the restrictive lockdowns, lack of visitation, and stress of potentially contracting a life-threatening illness have made incarceration "significantly more laborious than before . . . ." (Doc. No. 73 at 31.) In addition, defendant contends that his early release will not endanger the community because he has made significant strides as a person and has embraced sobriety. (Doc. No. 83 at 30.) Defendant states he is eager to be released to a halfway house or other residential program where he can begin to receive his disability benefits and obtain the medical care he needs.[12] (Doc. No. 73 at 32.)

The government counters that a reduction of defendant's sentence would not be consistent with consideration of the § 3553(a) sentencing factors. (Doc. No. 84 at 19.) The government's principal argument is that defendant should not be released because he pleaded guilty to the serious crime of receipt and distribution of child pornography. (*Id*. at 1–3, 19.) The government also asserts the defendant remains a danger to the community because he has not been properly rehabilitated, and, in particular, he has not taken any sex offender rehabilitation classes. (*Id*. at 19.) The government argues that "[r]educing [defendant] Hollis' current sentence on the basis of the risk of COVID-19 *reinfection*, would not serve the sentencing factor of affording 'adequate deterrence to criminal conduct.'" (*Id*. at 21.) In particular, the government notes that defendant Hollis was in possession of child pornography that the sentencing judge commented was "some of the worst ever . . . ." (*Id*. at 19.)

In his reply, defendant Hollis concludes by stating while the crime to which he pleaded guilty was serious, his offense did not involve contact with minors nor any production of child pornography. (Doc. No. 89 at 5–6.) He emphasizes he has taken many steps to rehabilitate himself by participating in extensive programming, including several re-entry preparation programs, but he has not been able to participate in sex offender treatment at FCI Terminal Island because the prison does not offer such classes. (*Id*. at 6 n.11.)

The court recognizes the seriousness of defendant's offense of conviction and agrees that the nature of that offense is one that evinces a danger to the safety of the community. However,

---

[12] For instance, defendant states that as of November 2020, he was still awaiting a knee brace, ordered in January 2020, that he needs to address his mobility issues. (Doc. No. 83 at 34.)

15

1  for that offense, defendant has already served over 12 years in prison. (Doc. No. 83 at 6.) In light
2  of his demonstrated commitment to his rehabilitation over the last 12 years in prison, the court is
3  not persuaded by the government's argument that defendant poses an ongoing danger to the
4  public that cannot adequately be addressed by enforcement of the terms and condition of
5  supervised release. While the court recognizes that rehabilitation alone is not enough to warrant
6  compassionate release, *see* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3, in the undersigned's
7  view, serving over 12-years in prison clearly reflects the seriousness of defendant's offenses of
8  conviction, is sufficient to promote respect for the law, and provides just punishment while also
9  affording adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(A), (B).
10       Nevertheless, compassionate release under § 3582(c)(1)(A) is not a general
11 reconsideration of sentencing provision akin to the prior version of Rule 35 of the Federal Rules
12 of Criminal Procedure. Nor may the court rely on § 3582(c)(1)(A) to modify a sentence to one
13 which the undersigned might find to be fair and reasonable were the court to be called upon to
14 sentence defendant today. Instead, because defendant has not shown extraordinary and
15 compelling reasons exist that warrant a reduction of his sentence under the provisions of
16 § 3582(c)(1)(A), his motion must be denied at this time.

## CONCLUSION

Defendant Hollis has made a persuasive case that his release from imprisonment after serving over twelve years in prison would be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). However, he has not shown "extraordinary and compelling" reasons justifying his release under 18 U.S.C. § 3582(c)(1)(A) at this time. Accordingly, defendant's motion for compassionate release (Doc. Nos. 71, 73, 83) is denied.

IT IS SO ORDERED.

Dated:   **February 15, 2021**                    _Dale A. Drozd_
                                                  UNITED STATES DISTRICT JUDGE